**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **DEBRA A. CALVANESE and** | ) | |
| **ALPHONSE F. CALVANESE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO.  3:15-cv-30151** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BANK OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
**PURSUANT TO RULES 9(b) AND 12(b)(6)**
**BY**
**DEFENDANT BANK OF AMERICA N.A.**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

    A.    The Netrate Concepts Purchase ........................................................... 2

    B.    Plaintiffs' Claims Against BANA ......................................................... 4

        1.    Count I – Breach of Contract ....................................................... 4

        2.    Count II – M.G.L. c. 93A.............................................................. 6

        3.    Count III – U.S.C.A. § 1640(a), Truth In Lending Act ................ 6

        4.    Count IV – Fraud ......................................................................... 7

LEGAL ARGUMENT ............................................................................................................. 7

    I.    The *Iqbal* Pleading Standard for a 12(b)(6) Motion to Dismiss ............................ 7

    II.    Plaintiffs Have No Viable Claim for Breach of Contract ..................................... 8

    III.    Plaintiffs Have No Viable TILA Claim ................................................................ 9

        A.    Plaintiffs' Netrate Dispute Is Not a "Billing Error" under Section 1666........................................................................................................ 9

        B.    Plaintiffs Fail to Specify How BANA Violated Section 1666 ................ 13

        C.    Plaintiffs' TILA Claim Is Barred by a One-Year Statute of Limitations .................................................................................... 13

    IV.    Plaintiffs Have No Viable Fraud Claim ............................................................... 16

        A.    The Pleading Standard for Fraud Claims ............................................... 16

        B.    Analysis of Plaintiffs' Fraud Claim ....................................................... 18

    V.    Plaintiffs Have No Viable Chapter 93A Claim...................................................... 19

CONCLUSION ..................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Abraham v. Woods Hole Oceanographic Inst.*,
    553 F.3d 114 (1st Cir. 2009) ...................................................16

*Alves v. Seigel's Broadway Auto Parts, Inc.*,
    710 F. Supp. 864 (D. Mass. 1989) ...................................................18

*American Express v. Koerner*,
    452 U.S. 233 (1981) ...................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................7, 8

*Baena v. KPMG*,
    453 F. 3d 1 (1st Cir. 2006) ...................................................20

*Beaumont v. Citibank (S.D.) N.A.*,
    2002 WL 483431 (S.D.N.Y. Mar. 28, 2002) ...................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................7, 8

*Berliner v. Lotus Development Corp.*,
    783 F. Supp. 708 (D. Mass. 1992) ...................................................17

*Binder v. Bank of Am. Corp.*,
    No. 3:10-00770, 2010 U.S. Dist. LEXIS 124208 (N.D. Tex. Nov. 22, 2010) ...................................................10

*Brooks v. AIG SunAmerica Life Ins. Co.*,
    480 F.3d 579 (1st Cir. 2007) ...................................................8

*Buck v. Am. Airlines, Inc.*,
    476 F.3d 29 (1st Cir.2007) ...................................................9

*Burnstein v. Saks Fifth Ave. & Co.*,
    208 F. Supp. 2d 765 (E.D. Mich. 2002) ...................................................15

*Chiras v. TD Bank*,
    2011 U.S. Dist. LEXIS 41280 (D. Mass. 2011) ...................................................18

*Calvanese v. Bank of America*,
    Civil Action No. 3:14-cv-14392 ...................................................1

*Dawkins v. Sears Roebuck and Co.*,
   109 F.3d 241 (5th Cir. 1997) ............................................................15

*Doyle v. Hasbro, Inc.*,
   103 F.3d 186 (1st Cir.1996) ..........................................................8, 17

*Ford Motor Credit Co. v. Milhollin*,
   444 U.S. 555, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980) ...........................10

*Freeman v. Town of Hudson*,
   714 F.3d 29 (1st Cir. 2013) .............................................................5

*Greisz v. Household Bank*,
   8 F. Supp. 2d 1031 (N.D. Ill. 1998) ....................................................10

*Humphrey v. United States Bank, N.A.*,
   2012 U.S. Dist. LEXIS 120112 (N.D. Okla. Aug. 24, 2012) ..................16

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
   313 U.S. 487 (1941) ..........................................................................18

*Knobbe v. Bank of Am.*,
   No 08-489, 2007 U.S. Dist. LEXIS 72298 (D. Neb. Sept. 26, 2007) ......15

*Kozaryn v. Ocwen Loan Servicing, LLC*,
   784 F. Supp. 21d 100 ......................................................................20

*Langenfeld v. Chase Bank United States, N.A.*,
   537 F. Supp. 2d 1181 (N.D. Okla. 2008) ...........................................12

*McGinty v. Beranger Volkswagen*,
   633 F.2d 226 (1st Cir. 1980) ..........................................................17

*Michelson v. Digital Fin. Servs.*,
   167 F.3d 715 (1st Cir.1999) ...............................................................8

*Neiman v. Chase Bank, USA, N.A.*,
   No. 13-8994, 2014 U.S. Dist. LEXIS 101553 (E. D. Ill. July 25, 2014) ..............15

*Ponte v. Chase Bank USA*,
   No. 12-cv-13901, 2013 U.S. Dist. LEXIS 155044. (E.D. Mich. Oct. 8, 2013) ...........12, 14, 16

*Rendler v. Corus Bank*,
   272 F.3d 992 (7th Cir. 2001) ...........................................................10

*Rodriguez-Ortiz v. Margo Caribe, Inc.*,
   490 F.3d 92 (1st Cir. 2007) ...............................................................8

*Salois v. Dime Sav. Bank, FSB*,
      128 F.3d 20 .........................................................................................................13

*Santos v. Sanyo Mfg. Corp.*,
      2013 U.S. Dist. LEXIS 63596 (D. Mass. 2013) ..................................................17

*Serabia v. Amoskeag Bank Shares, Inc.*,
      24 F.3d 357 (1st Cir. 1994).................................................................................17

*Shaw v. BAC Home Loans Serv., LP*,
      No. 10-11021-DJC, 2013 U.S. Dist. LEXIS 28863 (D. Mass. 2013)....................13

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
      533 F.3d 162 (3d Cir. 2008)...................................................................................4

*Steimel v. Trans Union Corp.*,
      No. 86-6091, 1988 U.S. Dist. LEXIS 4100 (E.D. Pa. May 10, 1988)....................15

*Steiner v. Unitrode Corp.*,
      834 F. Supp. 40 (D. Mass. 1993) ........................................................................17

*Thomas and Van Arkle v. Discover Fin. Servx. LLC*,
      382 B.R. 449 (N.D. Ill. 2007) .............................................................................12

*Wayne Investment v. Gulf Oil Corp.*,
      739 F.2d 11 (1st Cir. 1984)..................................................................................17

*Williams v. Astra USA, Inc.*,
      68 F. Supp. 2d 29 (D.Mass.1999) ..........................................................................8

**OTHER CASES**

*Meadwestvaco Corp. v. Worcester New Bond LLC*,
      2009 Mass. Super. LEXIS 92 (Mass. Super. Ct. Jan. 6, 2009)..............................18

*Hogan v. Riemer*,
      35 Mass. App. Ct. 360, 619 N.E.2d 984 (1993) ..................................................17

*McCann v. Davis, Malm & D'Agostine*,
      423 Mass. 558 (1996) .........................................................................................19

*Mechanics Nat'l Bank v. Killeen*,
      377 Mass. 100 (1979) .........................................................................................19

*Powell v. Rasmussen*,
      355 Mass. 117, 243 N.E.2d 167 (1969) ..............................................................18

*Zimmerman v. Kent*,
      31 Mass. App. Ct. 72, 575 N.E.2d 70 (1991) ......................................................18

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(b)(2) ...................................................................................17

15 U.S.C.A. § 1601 .............................................................................................1

15 U.S.C.A. § 1640 .............................................................................................4

15 U.S.C.A. § 1640(a) .........................................................................................6

15 U.S.C. § 1640(e) ...........................................................................................14

15 U.S.C. § 1644 (a) .......................................................................................6, 14

15 U.S.C. § 1666(b) ...........................................................................5, 10, 12, 13

15 U.S.C. § 1666(c) ...................................................................................5, 12

15 U.S.C. § 1644 (d) ...........................................................................................5

15 U.S.C. § 1666 .......................................................................................*passim*

15 U.S.C. § 1666(a)(3)(A) ................................................................................14

15 U.S.C. § 1666(a)(3)(B) ................................................................................14

**OTHER STATUTES**

Massachusetts General Laws, Chapter 93A, § 9 .............................................4, 6

Massachusetts Rules of Civil Procedure Rule 15(c) ..........................................16

**RULES**

Fed. R. Civ. P. 8 .................................................................................................7

Fed. R. Civ. P. 9(b) ................................................................................16, 17, 18

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 5, 7

Fed. R. Civ. P. 15(c) .........................................................................................16

Fed. R. Civ. P. 15(c)(1)(B) ...............................................................................16

**REGULATIONS**

12 C.F.R. § 226.13 ...........................................................................................10

12 C.F.R. § 226.13(a) .......................................................................................10

12 C.F.R. 226.13(c)(1) ................................................................................................................19

12 C.F.R. § 226.13(c)(2) ..............................................................................................................14

12 C.F.R. § 226.13(h) ..................................................................................................................15

12 C.F.R. § 226, Supp. I. com. 13(a)(3) .....................................................................................10

12 C.F.R. § 226, Supp. I. com. 13(c)(2) ......................................................................................14

Defendant Bank of America, N.A. (**BANA**) respectfully moves, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of Plaintiffs' Complaint.

## INTRODUCTION

This case arises out of Plaintiffs' purchase of an unspecified "travel membership to book travel at deeply discounted prices." Amended Complaint ("Am. Compl.") ¶ 5.  The Amended Complaint fails to specify "promised services and/or benefits that were never delivered or otherwise provided or refunded" to Plaintiffs, *id.*, but it makes clear that the *merchant*, to whom BANA paid the purchase price when Plaintiffs authorized the charge, refused to give Plaintiffs a refund.  Plaintiffs, however, improperly seek to hold BANA responsible for an outcome over which BANA has no control when the dispute is simply a case of buyer's remorse.

This is the second time this case has been removed to this Court. *See Calvanese v. Bank of America*, Civil Action No. 3:14-cv-14392. (**Calvanese I**) [Docket Entry (**D.E.**) 1] In the first round, Plaintiffs filed a Complaint on October 17, 2014, asserting four causes of action against BANA: Count I – Breach of Contract; Count II – M.G.L. c. 93A; Count IV – 15 U.S.C.A. § 1601, Truth In Lending Act (**TILA**);[1] and Count V – Fraud. This Court dismissed the TILA claim on Rule 12(b)(6) grounds *without prejudice* and declined to exercise supplemental jurisdiction over the remaining state law claims, remanding them to the state  court. Calvanese I [D.E. 29].

In a futile attempt to cure the defects of their TILA claim, Plaintiffs filed an Amended Complaint in the state court, quoting a portion of Section 1666 of the TILA, which spells out the timeline for a billing error resolution.  This is interesting, but it does not work for three reasons. First, Plaintiffs' dispute with a merchant was not a "billing error" within the meaning of the

---

[1] There was no Count III in the original Complaint.  Also, Plaintiffs previously represented to this Court that they did not oppose dismissal of the fraud claim. [D.E. 18 at p.3, n.1.] They have since reneged on that representation.

statute. Second, Plaintiffs' purported TILA claim is nothing more than a formulaic recitation of the statute, with no description of how BANA violated it. Third, and based on the TILA's statutory timeframe for resolving a "billing error," Plaintiffs' TILA claim is barred by a one-year statute of limitations. As with their state law claims, which are nearly identical to those previously asserted, Plaintiffs have no legally cognizable claims against BANA. The Amended Complaint, therefore, should be dismissed in its entirety.

## STATEMENT OF FACTS

### A.      The Netrate Concepts Purchase.

Plaintiffs Debra and Alphonse Calvanese allege that on June 25, 2013, they were lured into purchasing a "travel membership" to book travel at deeply discounted prices from Netrate Concepts ("Netrate") for $5,423.00. Am. Compl. ¶ 5 Plaintiffs claim that unspecified "promised services and/or benefits" were never delivered, and on July 10, 2013,[2] they demanded a refund from the merchant. Am. Compl. ¶¶ 5 & 6. Plaintiffs authorized the purchase price to be paid with their Bank of America-issued VISA® credit card. *See* Am. Compl. ¶ 7.

Plaintiffs allege that they have a Credit Card Agreement with BANA, "whereby [BANA] extended credit to the Plaintiffs in the form of purchases, balance transfers and cash advances by using a credit card.  The Agreement included an instruction to immediately report loss, theft, fraud or possible unauthorized use of the credit card." Am. Compl. ¶ 4.

On July 17, 2013, Plaintiffs notified BANA in writing that they disputed the Netrate charge appearing on their credit card. Am. Compl. ¶ 7 & Exhibit (**Ex.**) A, attached thereto. Among other things, Plaintiffs wrote that "[a]fter accessing the program and observing the comparisons, we learned of the fraudulent nature of the presentation." Am. Compl., Ex. A. They

---

[2]      The pleading recites July 10, <u>2014</u>, as the date Plaintiffs requested a refund, but given how Plaintiffs have chronologically laid out the allegations, this appears to be a typographical error.

cited the "***actual failure*** of the service to be as presented" and stated that they had made "multiple attempts to secure a realistic travel arrangement that ***met the standards of the presentation at sale.*"* Compl. Ex. A. (Emphasis added.) Although Plaintiffs allege that they provided BANA with "an explanation of the steps they took to obtain the promised benefits and services and refund from the merchant," *id.*, their letter to BANA cited **no** specific examples of what Netrate promised or how it failed to deliver on the promise.  *See* Am. Compl., Ex. A. Twelve days later, in a letter dated July 29, 2013, BANA notified Plaintiffs that it had issued a credit for the disputed charge. Am. Compl. ¶ 8.  The letter specifically stated:

- We have issued credit(s) to your account for the disputed
  charge(s) and credit your account for any interest charges and
  fees you incurred as a result of the disputed charge(s).
- The adjustment(s) will appear on your monthly statement.
- Although we consider your dispute(s) resolved, the merchant has an opportunity
  to review any information and provide additional documentation to support why
  they feel the transaction(s) is valid.
- In the event we receive additional information from the merchant,
  we will forward any relevant documentation, and let you know if additional
  information is needed to support your dispute(s).
- We recommend that you retain copies of all documentation regarding
  your dispute(s).

Am. Compl. ¶ 8, Ex. C. On that day, BANA also allegedly informed Plaintiffs that the merchant had forty-five days to dispute the credit BANA placed on their account. Am. Compl. ¶ 9.

On October 31, 2013, "more than ninety (90) days after notifying the Plaintiffs that it had considered the dispute resolved," BANA notified Plaintiffs telephonically and in writing that it could not pursue their billing dispute further due to the merchant's refund policy, and it "removed the chargeback."[3] Am. Compl. ¶ 11. Plaintiffs further allege that BANA never provided them with the merchant's documentation. Am. Compl. ¶ 12.

---

[3]     Plaintiffs' characterization of BANA's "removal" of the chargeback demonstrates a complete lack of understanding of the term "chargeback." First, under the Fair Credit Billing Act

Plaintiffs continued to dispute the charge by letters dated November 5, 2013, and April 28, 2014.  Am. Compl. ¶ 12. Plaintiffs further advised BANA that the Attorney General had taken action against Netrate. *Id.* On July 7, 2014, BANA informed Plaintiffs in writing that it was required to comply with VISA® Chargeback Rules and that Plaintiffs had not complied with the merchant's refund policy.  Am. Compl. ¶ 13. Plaintiffs continued to dispute the charge by letter dated July 14, 2014. Am. Compl. ¶ 14.  They claim that they have not received a response to said letter. Am. Compl. ¶ 15.

**B.    Plaintiffs' Claims Against BANA.**

On August 21, 2015, Plaintiffs filed a four-count Amended Complaint against BANA with the following claims: Count I – Breach of Contract; Count II – M.G.L. c. 93A; Count III – 15 U.S.C.A. § 1640, Truth In Lending Act; and Count IV – Fraud.

1.    Count I – Breach of Contract.

Plaintiffs did not attach a copy of the Credit Card Agreement (**CCA**), as amended by changes in terms (**CIT**) to the Complaint. Their claim, however, is grounded in the fiction that

---

section of the Truth-in-Lending Act, 15 U.S.C. § 1666, a cardholder may be entitled to a refund only if there is a "billing error" within the meaning of the statute.  If not, then the card issuer may pursue a "chargeback" through a procedure provided by the applicable credit card association (i.e., Visa®, MasterCard®, American Express®, etc.) "A 'chargeback' is the return of a transaction from the [credit card] Issuer to the Acquirer." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 164 (3d Cir. 2008). The "Acquirer" is the bank for the business (e.g., Netrate, the "Merchant") that agrees to accept certain credit cards as payment, *id.* at 164, and "Acquirers process those transactions on behalf of the Merchants for their goods and services." *Id.* at 165. A dispute resolution process allows for disputed charges to be submitted by the Issuer to the Acquirer through "chargeback" and representment procedures in accordance with "risk allocation judgments made by [the credit card association]" such as Visa® or MasterCard®. *Id.* "A 'representment' is the Issuer's challenge via resubmission of its response to the chargeback with additional information." *Id.* at 165 n.2. This back-and-forth process, driven primarily by the *Merchant's* decision to issue a refund, undermines Plaintiffs' suggestion that BANA could somehow force a refund by reaching into Netrate's bank account to retrieve the funds that BANA advanced upon Plaintiffs' authorization. In fact, BANA does not, and cannot, retrieve the funds from any merchant's account or control the outcome of the chargeback process. Nevertheless, in reality, and by definition, a chargeback cannot be "removed."

BANA breached the contract by failing to remove "fraudulent charges," charging interest and late fees, and making negative reports to credit bureaus (Am. Compl. ¶ 17); but Plaintiffs fail to cite *any* contractual provision in the CCA or CITs that BANA breached.  In reality, the CCA and CITs do not obligate BANA to place a permanent credit on their account, as Plaintiffs' allegations implausibly suggest. Likewise, and consistent with the TILA, the CCA that applies to a separate account, which was cancelled, expressly provides for cancellation of the account for any reason and at any time.

The CCA at the heart of Plaintiffs' claims does not obligate BANA to remove charges occasioned by a merchant's allegedly fraudulent sales practices. In fact, the CCA addresses only the "loss, theft, or possible unauthorized use" of the credit card: "**47. UNAUTHORIZED USE OF YOUR CARD** - Please notify us immediately of the loss, theft, or possible unauthorized use of your account…." CCA, attached as Ex. A-1.[4] In fact, no derivation of the word "fraud" appears anywhere in the CCA. Fraud is, however, later referenced in a CIT dated August 2, 2011, under the heading "Security," which refers to a theft-protection feature known as "Zero Liability Fraud Protection." Ex. A-4.[5] *See also* 15 U.S.C. § 1644 (a), (b), (c) and (d) (providing in part that whoever "knowingly" or "with unlawful or fraudulent intent," "uses" or "attempts or

---

[4]      In evaluating a Rule 12(b)(6) motion, the court may consider a limited category of documents outside the complaint without converting the motion into one for summary judgment. Such documents include public records and documents sufficiently referred to in the complaint. *See  Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (court may consider "'official public records; *documents central to plaintiffs' claim*; and documents sufficiently referred to in the complaint'") (ellipses and internal brackets omitted) (emphasis added).

[5]      "Visa's Zero Liability" Policy is [Visa's] guarantee that [cardholders] won't be held responsible for unauthorized charges made with [their] account or account information. [They are] protected if [their] Visa credit or debit card is lost, stolen or fraudulently used, online or offline."
http://usa.visa.com/personal/security/zero-liability.jsp

conspires to use" "any counterfeit, fictitious, altered, forged, lost, stolen, or ***fraudulently***

***obtained*** credit card" is subject to civil and criminal liability).

Plaintiffs' allegation that BANA wrongfully cancelled a second account is likewise

belied by the CCA for that account, which states, in relevant part: "**WE MAY SUSPEND OR**

**CLOSE YOUR ACCOUNT** - We may suspend or close your account or otherwise terminate

your right to use your account. We may do this at any time and for any reason…." Ex. B-1 at 34.

        2.      <u>Count II – M.G.L. c. 93A.</u>

Plaintiffs allege that on or about August 21, 2014, they sent BANA a demand letter,

pursuant to Massachusetts General Laws, Chapter 93A, Section 9.  Am. Compl. ¶ 22, Ex. H.

They allege that BANA violated the statute by failing to remove "fraudulent" charges from the

account; charging interest and fees; and making negative reports to credit bureaus. Am. Compl. ¶

23.  They also claim that BANA failed to make a reasonable offer of settlement in response to

their Chapter 93A letter when it knew or had reason to know that its conduct violated Section 2

of the statute. Am. Compl. ¶ 24. Since Plaintiffs have placed BANA's response squarely at issue,

BANA has attached its response. Ex. C.

        3.      <u>Count III – 15 U.S.C.A. § 1640(a), Truth In Lending Act.</u>

Plaintiffs baldly claim that there was a billing error on their account statement "which

consisted of billing for goods and/or services that were either not accepted by the Plaintiffs

because they did not comply with the contract between the Plaintiffs and the merchant and/or

billing for goods or services that were different from that which had been agreed upon by the

Plaintiffs and the merchant." Am. Compl. ¶ 27.  They have not alleged specifically how the

goods or services varied from the terms of the contract, nor have they attached the alleged

contract or cited to any specific contract term to show how the goods or services failed to

conform to the contract. Moreover, they do not state how BANA failed to comply with the

TILA. All Plaintiffs do is allege that BANA violated Section 1666 by "inter alia, failing to" and then recite, verbatim, Section 1666(b)'s statutory timeframe for resolving billing errors, without specifically stating which provision of the statute BANA violated. Am. Compl. ¶ 29.

        4.     <u>Count IV – Fraud.</u>

Plaintiffs allege that BANA made false statements "on or about July 29, 2013, and on one or two occasions thereafter, *indicating* that the issue was resolved and their account credited." Am. Compl. ¶ 32. (Emphasis added.) They further allege that BANA "*indicated* on or about July 29, 2013[,] that the merchant had 45 days to dispute the resolution by submitting appropriate paperwork, and that whatever paperwork was forwarded to the Defendant, the Defendant would forward to the Plaintiffs so that they had the opportunity to respond," but that BANA never forwarded any paperwork to Plaintiffs. Am. Compl. ¶¶ 33 & 34.  Plaintiffs characterize these "indications" as false statements and "representations as to material fact, which would be considered important to a reasonable person in the Plaintiffs' position in determining how to proceed regarding this matter"—whatever that means. Am. Compl. ¶ 35.  Plaintiffs further allege that BANA "knew these statements were false, or recklessly made the statements by willfully disregarding their truth or falsity" with the intention that Plaintiffs would rely on them. Am. Compl. ¶¶  36 & 37.  Plaintiffs claim reliance and an unspecified harm as a result of BANA's alleged conduct.

**LEGAL ARGUMENT**

**I.**      **THE *IQBAL* PLEADING STANDARD FOR A 12(B)(6) MOTION TO DISMISS.**

The Supreme Court has made it abundantly clear that plaintiffs cannot state a claim under Rule 8 of the Federal Rules of Civil Procedure by offering "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal

quotations omitted)). *See also Rodriguez-Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95-96 (1st Cir. 2007). "Factual allegations must be enough to raise a right to relief beyond the speculative level[.]" *Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 662 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the complaint pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Threadbare recitals of the legal elements, supported by mere conclusory statements, are insufficient. *Id.* Where the well-pleaded facts of a complaint do not permit the court to infer more than the mere possibility of misconduct, the complaint should be dismissed. *Id.* at 679. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 677.

## II.   PLAINTIFFS HAVE NO VIABLE CLAIM FOR BREACH OF CONTRACT.

Plaintiffs' contractual breach claim should be dismissed based on the grossly inadequate allegations of the Amended Complaint. In order to state a viable breach of contract claim, plaintiffs must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach. *See Michelson v. Digital Fin. Servs.,* 167 F.3d 715, 720 (1st Cir.1999).

> Plaintiffs also must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with "substantial certainty," the specific contractual promise the defendant failed to keep. *See Buck v. Am. Airlines, Inc.,* 476 F.3d 29, 38 (1st Cir.2007) ("In a contract action, this irreducible ['substantial certainty'] minimum requires the pleader to 'explain what obligations were imposed on each of the parties by the alleged contract.' ") (citations omitted); *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194–95 (1st Cir.1996) (holding that "[c]onclusory statements that 'Hasbro and its executives failed to meet their contractual requirement,' are insufficient to satisfy the pleading requirements"); *Williams v. Astra USA, Inc.,* 68 F. Supp. 2d 29, 37 (D.Mass.1999).

*Brooks v. AIG SunAmerica Life Ins. Co.*, 480 F.3d 579, 586 (1st Cir. 2007).

As with any contractual dispute, the starting point is the language of the contract. Here, however, Plaintiffs fail to cite to any specific provision or language setting forth each of the parties' respective obligations under the CCA or CITs. They do not plead when the contract was formed or whether any of its terms were amended. All they allege, in conclusory fashion, is that BANA breached the contract by failing to remove "fraudulent charges," by charging interest and late fees, and by negative reporting to credit bureaus. *See Doyle v. Hasbro*, 103 F. 3d at 195 (dismissing breach of contract claim alleging conclusorily that the defendants "failed to meet their contractual requirement"). Plaintiffs fail to cite any contractual provision that defines "fraudulent charge" or show how the charge they authorized falls within the meaning of that term. Likewise, Plaintiffs fail to allege how BANA was contractually obligated to remove a charge that they specifically authorized BANA to pay. In short, Plaintiffs' breach of contract claim fails to describe with "substantial certainty" the specific contractual promise that BANA allegedly failed to keep. For these reasons, Count I should be dismissed.

## III.   PLAINTIFFS HAVE NO VIABLE TILA CLAIM.

### A.   Plaintiffs' Netrate Dispute Is Not a "Billing Error" under Section 1666.[6]

For Plaintiffs to succeed on a TILA claim, they must, among other things, show the existence of a "billing error." Section 1666 and its implementing regulation, known as Regulation Z, enumerate the situations which constitute a "billing error":

> (1)     A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.
> (2)     A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.
> (3)     A reflection on a statement of goods or services not accepted by

---

[6]     15 U.S.C. § 1666 is more commonly known as the Fair Credit Billing Act.

the obligor of his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.[7]

(4)     The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

(5)     A computation error or similar error of an accounting nature of the creditor on a statement.

(6)     Failure to transmit the statement required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

(7)     Any other error described in regulations of the Board.

15 U.S.C. § 1666(b) and 12 C.F.R. § 226.13(a).

The Official Staff Interpretation to 12 C.F.R. § 226.13, entitled "Billing errors—resolution procedure," states that a cardholder's dispute about the quality of the goods or services received does not constitute a "billing error." 12 C.F.R. § 226, Supp. I, com. 13(a)(3).[8] *See also Greisz v. Household Bank,* 8 F. Supp. 2d 1031, 1042 (N.D. Ill. 1998) (holding that consumer's notice was insufficient to trigger duty to investigate because the dispute alleged by the consumer regarding the quality of an accepted good or service did not meet "billing error" definition). "Additionally, the TILA, its implementing regulations, and Official Staff Interpretations focus on what might be considered clerical errors—the debtor was billed the wrong amount, billed for items he did not purchase, billed for items he refused or did not receive, or the creditor made some type of computational error or did not mail a statement." *Binder v. Bank of Am. Corp.,* No. 3:10-00770, 2010 U.S. Dist. LEXIS 124208 *12 (N.D. Tex. Nov. 22, 2010) (citing 12 C.F.R. § 226.13(a)). Here, Plaintiffs were billed for a travel club

---

[7]     Plaintiffs may argue that their dispute falls within this situation, but it does not, because Plaintiffs never provided BANA with any evidence that what they received was not consistent with the agreement made at the time of the transaction.

[8]     "Unless demonstrably irrational, Federal Reserve Board staff opinions construing [TILA] or Regulation [Z] should be dispositive[.]" *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980); *Rendler v. Corus Bank,* 272 F.3d 992, 997 (7th Cir. 2001) (the official commentary to Regulation Z is an "authoritative interpretation" of the TILA and Regulation Z).

membership, which they received, attempted to use, and subsequently found not to have met some unspecified standards.

The facts of this case are nearly identical to those in *Beaumont v. Citibank (S.D.) N.A.*, No. 01-cv-3393, U.S. Dist. LEXIS 5276  (S.D.N.Y. Mar. 28, 2002), where the plaintiff became dissatisfied with a group membership ***after*** he discovered that it did not provide the benefits and services he was promised. There, the plaintiff complained that the membership "never provided the product(s) and services that it promised and it failed to comply with its 100% unconditional refund policy," and that he "***never received*** the product(s) advertised by [the membership], in working condition." *Id.* Noting that a "dispute relating to the quality of property or services that the consumer accepts is expressly excluded from the definition of 'billing error,'" the court dismissed his Section 1666 claim. *Id.* at *3-4.[9]

Plaintiffs similarly complain that Netrate falsely represented the benefits of the membership, but they do not dispute that they received a travel club membership and that they were charged the agreed purchase price of $5,423.00; nor do they argue that BANA made a computational error. Rather, Plaintiffs conveyed their dissatisfaction "after ***multiple attempts*** to secure a realistic travel arrangement that ***met the standards of the presentation at sale***."  Am. Compl., Ex. A. (Emphasis added.) Clearly, Plaintiffs accepted the membership and utilized Netrate's membership services, only to conclude that the quality was an "actual failure" to meet the "standards of the presentation."

---

[9]     No case has adopted such an expansive view of a "billing error" and for good reason. Holding that Plaintiffs' dispute with Netrate is a "billing error" would effectively make credit card companies guarantors of the quality of the goods and services that cardholders purchase, thus providing consumer-protection insurance against false advertising or buyers' remorse. There is no basis for concluding that Congress intended to impose such a broad obligation.

Notably, Plaintiffs' own letter to BANA lacks any reference to a billing error. "[A]s has been held or implied by every court addressing the question, the *perceived* error identified in the notice must qualify as a 'billing error,' as defined in § 1666(b)." *Langenfeld v. Chase Bank United States, N.A.*, 537 F. Supp. 2d 1181, 1193 n.15 (N.D. Okla. 2008). (Emphasis in original.) Within sixty (60) days of the creditor's transmission of the allegedly erroneous statement, the cardholder must: (1) provide the cardholder's name and account number; (2) indicating his belief that the account statement contains one or more of the types of billing errors set forth in Section 1666(b) and the amount(s) thereof; and (3) setting for the reasons for such belief. 15 US.C. § 1666 (a)(1)-(3). Moreover, if the cardholder's written notice does not satisfy these requirements, *the creditor has no duty to investigate the dispute*. *Ponte v. Chase Bank USA*, Civil Action No. 12-cv-13901, 2013 U.S. Dist. LEXIS 155044, *35. (E.D. Mich. Oct. 8, 2013), adopted by 2013 U.S. Dist. LEXIS 154582 (E.D. Mich. Oct. 29, 2013). *Cf.* 15 U.S.C. § 1666(c) ("Nothing in this section shall be construed to prohibit any action by a creditor to collect any amount *which has not been indicated by the obligor to contain a billing error.*") (Emphasis added.) Thus, a cardholder's failure to reference a "billing error" or describe a billing error with requisite specificity fails to satisfy the statute's requirement. *Id.* at *37. *See also Thomas and Van Arkle v. Discover Fin. Serv. LLC,* 382 B.R. 449 (N.D. Ill. 2007) (dismissing Section 1666 claim presented expressly as "billing error" as not a "billing error" within meaning of statute). On its face, and as a matter of law, Plaintiffs' letter to BANA neither referenced a "billing error" nor described with requisite specificity how the situation fell within the meaning of the term.  As a result, their notice to BANA did not trigger any duty on BANA's part to investigate their claim

or to provide a permanent credit, as Plaintiffs implausibly suggest.[10]  Plaintiffs have no viable

TILA claim under Section 1666.

**B.      Plaintiffs Fail to Specify How BANA Violated Section 1666.**

Although they quote extensively from Section 1666(a) (which they erroneously cite as

1666(b)), Plaintiffs utterly fail to articulate just how BANA violated the TILA. The quoted

language, preceded by the bald allegation that BANA violated the statute by "inter alia, failing

to" comply with it, merely sets forth the timeframe for dealing with a billing error as defined by

Section 1666(b). This is precisely the sort of threadbare pleading that warrants dismissal.  It

provides no reasonable inference to support the notion that BANA is liable under the statute. *See*

*Shaw v. BAC Home Loans Serv., LP*,  No. 10-11021-DJC, 2013 U.S. Dist. LEXIS 28863 (D.

Mass. 2013) (dismissing TILA claim where plaintiff alleged broker told her that payments would

be different from TILA disclosures, but she failed to allege how such actions violated TILA).

Thus, the TILA claims should be dismissed—again.

**C.      Plaintiffs' TILA Claim Is Barred by a One-Year Statute of Limitations.**

Plaintiffs may argue that their TILA claim arises out of the timing of the conclusion of

BANA's investigation "more than ninety (90) days after notifying Plaintiffs that it considered the

dispute resolved." If they do, their claim is doomed because it is barred by a one-year statute of

limitations.  *See* 15 U.S.C. § 1640(e) (providing that a civil action for a TILA violation must be

brought within one year of the violation).[11] As set forth in greater detail below, Plaintiffs filed

---

[10]      There is good reason for requiring a statement of reasons supporting the assertion of
billing error. Without such a requirement, any cardholder who does not want to pay a credit card
charge could write a letter merely invoking a "billing error" in order to receive the protections
reserved only for a cardholder with a legitimate "billing error."

[11]      The TILA does have a tolling doctrine, but "courts have taken a narrow view of equitable
exceptions to limitations periods…finding them appropriate only when the circumstances that
cause a plaintiff to miss a filing deadline are out of his hands." *Salois v. Dime Sav. Bank, FSB*,
128 F.3d 20, 25 (citations omitted). Having received BANA's written response and their monthly

the original Complaint on October 17, 2014, two days after the statute of limitations had passed. *See* Ex. D, State Court Docket.

The "finality" of a Section 1666 investigation is prescribed by the statute and its implementing regulation, known as "Regulation Z": If a card holder sends a written notice disputing a charge within sixty days of receiving a bill, a card issuer must acknowledge the dispute within 30 days, investigate the matter, and provide a written explanation of its decision within two billing cycles or 90 days, "*whichever is shorter*." *American Express v. Koerner*, 452 U.S. 233, 236-37 (1981) (emphasis added). *See also* 15 U.S.C. §§ 1666(a), 1666(a)(3)(A), and 1666(a)(3)(B); and 12 C.F.R. § 226.13(c)(2). *See also* 12 C.F.R. § 226, Supp. I, com. 13(c)(2) ("The phrase two complete billing cycles means two actual billing cycles occurring after receipt of the billing error notice, not a measure of time equal to two billing cycles"). *See also Ponte v. Chase Bank USA, N.A.*, No 12-cv-13901, 2013 U.S. Dist. LEXIS 155044, *38 (E. D. Mich. Oct. 8, 2013) (citing *Knobbe v. Bank of Am.*, No 08-489, 2007 U.S. Dist. LEXIS 72298, *14-15 (D. Neb. Sept. 26, 2007) (holding that bank "was required to take specified actions by the date represented by the close of two of its complete billing cycles after receipt of the letter or ninety days after receipt of the letter, whichever is earlier")).

If Plaintiffs are placing the finality of BANA's investigation at issue, and the statutory standard is the shorter of 90 days or two billing cycles, resort must be had to Plaintiffs' billing

---

account statements, Plaintiffs were on notice that the TILA clock was ticking. Likewise, they cannot show that BANA took active steps to prevent them from suing on time, or that they were unable to obtain vital information bearing on the existence of their claim. *See id.* at 25-26 (discussing tolling and holding that discovery of cause of action at attorney consultation is not a valid basis for tolling the statute of limitations when the plaintiffs had been receiving their loan documents). Plaintiffs do not, and cannot, claim that BANA concealed anything from them that left them unable to discover any wrongful conduct, so under no set of circumstances could the one-year statute be tolled in this case.

statements and to the 90-day period to determine the shorter of the two. Below is a summary of
the relevant timeline:

> July 17, 2013 – Plaintiff submits the claim in writing to BANA.
>
> July 22, 2013 – BANA receives Plaintiffs' billing dispute. See Exhibit
> with "BRD" (Business Receipt Date) notation. *See* attached Ex. E.
>
> July 16, 2013 – August 14, 2013 – The cycle during which Plaintiffs
> submitted the claim received on July 22, 2013. *See* attached Ex. F-1.
> Ninety days from July 22 was October 20, 2013.
>
> August 15, 2013 – September 13, 2013 – First complete billing cycle. *See*
> attached Ex. F-2.
>
> September 14, 2013 – October 15, 2013 – Second complete billing cycle.
> *See* attached Ex. F-3.

According to Section 1666, and if Plaintiffs had actually submitted a billing error, which

they did not, the TILA investigation would have concluded by October 15, 2013, because it is

the shortest period within the statutory timeframe.[12] Thus, Plaintiffs' initial pleading, filed

---

[12]    To the extent that Plaintiffs argue that their subsequent notifications of alleged billing
errors on November 5, 2013 and April 28, 2014 give rise to separate time limits, this argument
gets them nowhere in light of case law from other district and circuit courts holding that Section
1666(a)'s statutory timeframe begins to run "after the creditor [has] transmitted the *first* periodic
statement that reflects the alleged billing error." *See, e.g., Neiman v. Chase Bank, USA, N.A.*, No.
13-8994, 2014 U.S. Dist. LEXIS 101553 (E. D. Ill. July 25, 2014) (quoting *Dawkins v. Sears
Roebuck and Co.*, 109 F.3d 241, 243 (5th Cir. 1997) (citing 12 C.F.R. § 226.13(b)(1)) (emphasis
in original)); and citing *Burnstein v. Saks Fifth Ave. & Co.*, 208 F. Supp. 2d 765, 776 (E.D. Mich.
2002) (stating that there "could not have been . . . any 'continuing' violation by [the defendant]
of § 1666(a)'s 30-day and 90-day requirements" as "[the defendant's] procedural violations were
complete as of the dates that these deadlines passed"); *Steimel v. Trans Union Corp.*, No. 86-
6091, 1988 U.S. Dist. LEXIS 4100, at *3 (E.D. Pa. May 10, 1988)  (substantially similar). *See
also* 12 C.F.R. § 226.13(h) (creditor "has no further responsibilities under this section...if a
consumer reasserts substantially the same billing error"). Plaintiffs' own allegations confirm
their presentation of the same dispute after BANA reinstated the charge: "By letters dated
November 5, 2013, and April 28, 2014, Plaintiffs again ***reiterated*** their claim of a disputed
charge to their account with Defendant." Am. Compl.  ¶ 13 (emphasis added). This was nothing
more than a reassertion of the same dispute—for the same charge, with the same merchant, for
the same travel club membership.  As a matter of law, BANA had no further obligation to

October 17, 2014, was filed outside the limitations period and is, therefore, barred.[13] The TILA

claim, therefore, must be dismissed.

## IV.   PLAINTIFFS HAVE NO VIABLE FRAUD CLAIM.

### A.   The Pleading Standard for Fraud Claims.

Allegations of fraud are governed by Rule 9(b) of the Federal Rules of Civil Procedure:

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be

alleged generally."  Fed. R. Civ. P. 9(b).  "Rule 9 imposes a heightened pleading requirement for

allegations of fraud in order to give notice to defendants of the plaintiffs' claim, to protect

defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike

suits,' and to prevent the filing of suits that simply hope to uncover relevant information during

---

respond to these letters. *See, e.g., Humphrey v. United States Bank, N.A.,* 2012 U.S. Dist. LEXIS 120112 at *16-17 (N.D. Okla. Aug. 24, 2012) (plaintiff's resubmission of a dispute where "[t]he charge was by the same vendor, for the same amount, for the same service" was a reassertion of the same billing error the bank had already investigated and therefore the bank had no further obligations under the TILA or Regulation Z). Further, it is not reasonable to find that the one-year period tolls "indefinitely every time a creditor fails to respond to an obligor's written communication that did not impose a duty to respond….[T]he more sound approach is to deem the claim as having accrued at the expiration of the period within which [the creditor] was…required to respond. *Ponte*, No 12-cv-13901, 2013 U.S. Dist. LEXIS 155044, *39. *See also Burnstein*, 208 F. Supp. 2d at 773 (applying statute as a bar, even where creditor "did not rigorously adhere to the statutory scheme").

[13]      To the extent that Plaintiffs assert any form of the "relation back doctrine," this argument also fails.  Under the Federal Rules of Civil Procedure, the "'relation back doctrine' derives from Federal Rule of Civil Procedure 15(c) whereby amended pleadings may be deemed to 'relate back' for statute of limitations purposes to the date of the pleading if certain conditions are met.…Pursuant to Rule 15(c)(1)(B), an amended complaint relates back to a prior complaint where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 177-18 n. 5 (1st Cir. 2009) (citation omitted).  Rule 15(c) of the Massachusetts Rules of Civil Procedure provides similar, but not identical, language: "Whenever the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading."

discovery.") *Doyle v. Hasbro*, 103 F.3d at 194 (citing *McGinty v. Beranger Volkswagen*, 633 F.2d 226, 228-29 & n.2 (1st Cir. 1980)).

The Court of Appeals for the First Circuit has held that under Rule 9(b), the complaint must specify the time, place and content of the alleged misrepresentation. *Steiner v. Unitrode Corp.*, 834 F. Supp. 40, 43 (D. Mass. 1993) (citing *Wayne Investment v. Gulf Oil Corp.,* 739 F.2d 11, 13 (1st Cir. 1984)). Moreover, although scienter may be pled generally, a plaintiff must identify facts or circumstances showing that the alleged misrepresentations were false when made, and not merely proven wrong in hindsight. *Steiner,* 834 F. Supp. at 43 (citing *Berliner v. Lotus Development Corp.,* 783 F. Supp. 708 (D. Mass. 1992)). Finally, "general averments of the defendant['s] knowledge of material falsity will not suffice . . . . [Rather,] the complaint must set forth specific facts that make it reasonable to believe that defendant[] knew that a statement was materially false or misleading. The rule requires that the particular times, dates, places or other details of the alleged fraudulent involvement of the actors be alleged." *Santos v. Sanyo Mfg. Corp.*, 2013 U.S. Dist. LEXIS 63596, *5-6 (D. Mass. 2013)(quoting *Serabia v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir. 1994), *superseded by statute on other grounds*, 15 U.S.C. § 78u-4(b)(2)).  As set forth below, Plaintiffs' fraud claim cannot meet the heightened standard of Rule 9(b).

To recover on a claim of fraud, a plaintiff must aver (1) the defendant made a material representation of fact with the goal of inducing the action taken by the plaintiff; (2) with knowledge of the falsity of the representation; (3) the plaintiff's reasonable reliance on the misrepresentation; and (4) that the plaintiff suffered damages as a result of its reliance on the misrepresentation.  *Hogan v. Riemer,* 35 Mass. App. Ct. 360, 365, 619 N.E.2d 984 (1993);

*Zimmerman v. Kent,* 31 Mass. App. Ct. 72, 77-78, 575 N.E.2d 70 (1991).  *See also Powell v.*

*Rasmussen,* 355 Mass. 117, 119, 243 N.E.2d 167 (1969).[14]

### B.    Analysis of Plaintiffs' Fraud Claim.

Plaintiffs' fraud claim hinges on an allegedly false statement contained in BANA's letter

of July 29, 2013, which stated that BANA issued a credit to Plaintiffs' account, and indicated

that the dispute was "resolved."  Far from a model of clarity, Plaintiffs' fraud claim baldly

characterizes that statement as a misrepresentation made with knowledge of falsity. That letter,

however, suggests the opposite because it goes on to state that the merchant would have an

opportunity to review the dispute and submit documentation supporting why it considered the

charge to be valid. Thus, the letter expressly left open the possibility that the credit would be

reversed. This hardly rises to the level of a fraudulent statement made with knowledge of its

falsity.

Plaintiffs also allege that BANA made false statements "on one or two occasions" but

they make no effort to specify the dates or manner in which such statements were allegedly

made.  These are the precisely the "general averments" that do not suffice under Rule 9(b).

Finally, Plaintiffs' fraud claim fundamentally fails because BANA's July 29, 2013, letter,

which cited the merchant's opportunity to weigh in on the validity of Plaintiff's dispute, casts

strong doubt on the reasonableness of Plaintiffs' reliance on the so-called misrepresentation that

the issue was "resolved." *See Chiras v. TD Bank*, 4:10-40168, 2011 U.S. Dist. LEXIS 41280, *3

(D. Mass. 2011) (citing *Meadwestvaco Corp. v. Worcester New Bond LLC*, 2009 Mass. Super.

---

[14]      A federal court ordinarily must apply the choice–of–law rules of the State in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co*., 313 U.S. 487, 496 (1941). For tort claims, Massachusetts has adopted a "hybrid" approach, applying the law of the place where the alleged injury occurred, unless a different jurisdiction has a more significant interest. *See Alves v. Seigel's Broadway Auto Parts, Inc.*, 710 F. Supp. 864, 870-71 (D. Mass. 1989). As Plaintiffs are Massachusetts residents who ostensibly would claim the alleged injury occurred here, Massachusetts law arguably applies.

LEXIS 92 (Mass. Super. Ct. Jan. 6, 2009) (stating that elements of fraud include a false representation by defendant and plaintiff's justifiable reliance on that representation)). If anything, BANA's letter "indicated" that the credit applied to the account was a provisional one, subject to reversal if the merchant believed the charge to be valid. *See, e.g.,* 12 C.F.R. 226.13(c)(1) ("A creditor may temporarily correct the consumer's account in response to a billing error notice….") Accordingly, Count V should be dismissed with prejudice.

## V.       PLAINTIFFS HAVE NO VIABLE CHAPTER 93A CLAIM.

Plaintiffs' Chapter 93A claim should be dismissed because there are no actionable underlying claims against BANA. *See, e.g., McCann v. Davis, Malm & D'Agostine*, 423 Mass. 558, 560-561 (1996) (holding that a  Chapter 93A claim depends on other substantive claims and if the evidence fails to support those claims, it also fails to support the claim of violations of Chapter 93A, and stating that not every negligent act will qualify as a Chapter 93A violation).[15] Moreover, Plaintiffs' Chapter 93A letter was facially deficient in that it confined the alleged wrongdoing to a violation of the TILA, but without citing to the specific TILA provision that BANA allegedly violated. Thus, the letter failed to give BANA reasonable notice of the conduct complained of. *See* Ex. C.

Finally, on its face, Plaintiffs' Chapter 93A claims fails. At the heart of Plaintiffs' claim is BANA's alleged failure to remove "fraudulent" charges from the account; charging interest and fees; and making negative reports to credit bureaus. Plaintiffs, however, fail to provide any detail demonstrating unfairness or deception.  Indeed, the letter that they received from BANA made clear that the merchant with whom Plaintiffs had a dispute would have an opportunity to

---

[15]      *See also Mechanics Nat'l Bank v. Killeen*, 377 Mass. 100, 109 (1979) ("Just as every lawful act is not thereby automatically free from scrutiny as to its unfairness under c. 93A … so not every unlawful act is automatically an unfair (or deceptive) one under G. L. c. 93A.") (citation omitted).

review their dispute and to state why it believed the charge to be valid. Obviously, Netrate

considered the charge valid and refused to refund the purchase price (which BANA had financed

at Plaintiffs' request). "Without further factual detail demonstrating unfairness, as opposed to

clerical error or mere negligence, [Plaintiffs'] claim for a violation of Chapter 93A cannot be

sustained." *Kozaryn v. Ocwen Loan Servicing, LLC*, 784 F. Supp. 21d 100, 103 (D. Mass. 2011)

(citations omitted); *see also Baena v. KPMG*, 453 F. 3d 1, 3 (1st Cir. 2006) ("To apply at all

[Chapter 93A] requires a level of fault going beyond mere negligence."). Count IV, therefore,

should be dismissed.

## CONCLUSION

For all of the foregoing reasons, BANA respectfully requests that Plaintiffs' breach of

contract, Chapter 93A, TILA, and common law fraud claims be dismissed with prejudice. As a

matter of law, Plaintiffs have no actionable claims against BANA.

Respectfully submitted this 3rd day of September, 2015.

/s/ Erik J. Tomberg
Erik J. Tomberg, BBO# 669413
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
260 Franklin Street –14th Floor
Boston, MA 02110-3112
(617) 422-5300
erik.tomberg@wilsonelser.com

Kathleen H. Dooley
*Pro hac vice* admission pending
kdooley@mcguirewoods.com
MCGUIREWOODS LLP
201 N. Tryon Street
Charlotte, North Carolina  28202
T: 704-343-2347

**Attorneys for Defendant**
**Bank of America, N.A.**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 3rd day of September, 2015, the foregoing document was filed through the ECF system, the document will be sent electronically to the registered participants, and paper copies will be served via first class mail on non-registered participants, as follows:

Thomas A. Kenefick, III
73 Chestnut Street
Springfield, MA 01103
(413) 734-7000
(413) 731-1302 fax
takenefick@takenfick.com

   /s/ Erik J. Tomberg
Erik J. Tomberg