UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO. 3:15-cv-30151

| | |
|---|---|
| DEBRA A. CALVANESE and ALPHONSE F. CALVANESE, <br>      Plaintiffs <br><br> v. <br><br> BANK OF AMERICA, <br>      Defendant. | PLAINTIFFS' OPPOSITION TO *MOTION TO DISMISS PURSUANT TO RULES 9(b) and 12(b)(6) BY DEFENDANT BANK OF AMERICA N.A.* |

The Plaintiffs hereby oppose the Defendant's *Motion to Dismiss Pursuant to Rules 9(b) and 12(b)(6) By Defendant Bank of America N.A.* ("motion to dismiss"). Specifically, the Plaintiffs state the following:

Relevant Factual Allegations

The Defendant endeavors to depict the situation the Plaintiffs encountered with Netrate as a merchant cancellation /refund issue. Instead, Netrate tricked the Plaintiffs into purchasing something they were never going to receive in return for their payment. This is supported by the fact that the Massachusetts Attorney General sued Netrate[1], asserting that Netrate "offer[ed] memberships to book travel at deeply discounted prices, and [misled] consumers into paying several thousands of dollars for promised benefits that *were never provided or refunded*." (Emphasis added.) See *March 31, 2014 Press Release from Attorney General Martha Coakley, attached to the Amended Complaint* at Exhibit B. The Attorney General's suit alleged that Netrate's promised discounts never materialized. Id. Regarding the cancellation/refund policy, purchasers were "charged thousands of dollars for access to the website and its deals, but the

---

[1] The defendants in the Attorney General's case were defaulted.

1 | Page

companies failed to send the log-in information until after the three-day cancellation period, specified in the contracts, had already expired." Id.  Thus, the Attorney General's allegations support the Plaintiffs' allegations that, by the merchant's own devise, it was impossible for the Plaintiffs in this case to abide by the cancellation/refund rules after they paid.

Stripped to its essence, the Plaintiffs' factual allegations are thus:

- They were tricked into providing their credit card and/or credit card information to Netrate for the purchase of a particular travel club membership offering deep discounts on travel which the merchant never intended to provide and, in fact, never provided.  See 15 U.S.C.S. §1666, defining a billing error to include "A reflection on a statement of goods or services […] not delivered to the obligor […] in accordance with the agreement made at the time of the transaction."  Para. 5, *Amended Complaint*.

- The merchant did not provide the opportunity which it had represented would be available for the Plaintiffs to cancel their purchase; instead the merchant purposefully withheld access to the product until after the cancellation period had lapsed.  Exhibit A, *Amended Complaint*.

- The Plaintiffs immediately notified the Defendant and included, not only all details such as their name, account number, that the statement contained a billing error and amount of the error and reasons for the Plaintiffs' belief that such was an error, but also supporting documents, such as the Massachusetts Attorney General's press release related to its consumer protection civil action against the merchant.  See 15 U.S.C.S. §1666(a). Exhibit A, *Amended Complaint*.

- Initially, on July 29, 2013, the Defendant issued a credit to the Plaintiffs' account, stating that 1) the matter was resolved; and 2) if any further information surfaced that could lead

to a reversal, the Defendant would "forward any relevant documentation, and let [the Plaintiffs] know if additional information [was] needed to support [their] dispute(s)." Paras. 8, 9, *Amended Complaint*.

- As a result of Defendant's misrepresentations, the Plaintiffs forewent the opportunity to proceed directly against Netrate for damages.  Para. 18, *Amended Complaint*.

- Contrary to its representation, the Defendant never forwarded any relevant documents from the merchant. Para. 12, *Amended Complaint*.

- On or about October 31, 2013, the Defendant notified the Plaintiffs it had reversed the credit, depicting the situation as one "involving a merchant's return, refund, or cancellation policy."  See 15 U.S.C.S. §1666(a)(B)(ii) ("In the case  of a billing error where the obligor alleges that the creditor's billing statement reflects goods not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction, a creditor may not construe such amount to be correctly shown unless he determines that such goods were actually delivered, mailed, or otherwise sent to the obligor and provides the obligor with a statement of such determination.")  Para. 11, *Amended Complaint*.

- The Plaintiffs immediately (November 5, 2013)[2] communicated their continued dispute regarding the billing error by the Defendant. Para. 13, *Amended Complaint*.

- The Defendant gave an adverse report to a credit reporting agency without giving the proper notifications, which negatively impacted the Plaintiffs' credit. Para. 23, *Amended Complaint*.

---

[2] Para. 13, *Amended Complaint*.

- The Defendant closed another of the Plaintiff's credit card accounts.  Para. 17, *Amended Complaint*.

- The Plaintiffs and Defendant had "entered into a Credit Card Agreement whereby the Defendant extended credit to the Plaintiffs in the form of purchases, balance transfers and cash advances"; and that if the timely reported any loss, theft, fraud or possible unauthorized use (*Amended Complaint*, para. 4), the Defendant would remove such charge (*Amended Complaint*, para. 17.)  See also Exhibit H, *Amended Complaint*.  Indeed, the Defendant originally complied with its obligations.  See Para. 8 and Exhibit C, *Amended Complaint*.  It then breached its contract by reinstating the charge regarding the fraudulent merchant activity (e.g., Para. 10, *Amended Complaint*).

The foregoing demonstrates violations of the Truth In Lending Act and Mass. Gen. L. c. 93A, as well as breach of contract and fraud.

## I.   Argument

When considering a motion to dismiss, the standard of review requires the Court to "accept the well-pleaded factual allegations in the complaint and draw all reasonable inferences therefrom" in the Plaintiffs' favor.  See Van Wagner Boston, LLC v. Davey, 770 F.3d 33, 40 (1st Cir. Mass. 2014).  "At the pleading stage, the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'"  Garcia-Catalan v. United States, 734 F.3d 100, 102-103 (1st. Cir. P.R. 2013), citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  If the factual assertions set forth in the complaint "support the 'reasonable inference that the defendant is liable for the misconduct alleged'", the Court should deny the motion.  See Yacubian v. United States, 750 F. 3d 100, 108 (1st. Cir. Mass. 2014), citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (internal

citations and quotations omitted.)   In the case at bar, the Plaintiffs' complaint sufficiently pleads their entitlement to relief.

   A.  <u>The Truth-in-Lending Act Claim Is Sufficiently Stated</u>

      1.  <u>The Merits</u>

Title 15 of the United States Code Section 1640, provides, in pertinent part:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this chapter [15 USCS §§1631 et seq.], including any requirement under section 125 [15 USCS §1635], subsection (f) or (g) of section 131 [15 USCS § 1641], or chapter 4 or 5 of this *title* [15 USCS §§1666 et seq. or 1667 et seq.] with respect to any person is liable to such person in an amount equal to the sum of—

15 USCS §1640(a).  Here, the Calvaneses assert that BANA did not comply with the requirements imposed by 15 USCS §1666.

Section 1666 involves "Correction of billing errors" and sets forth, in pertinent part, that upon timely notification of a billing error, a creditor must either "make appropriate corrections in the account of the obligor", or:

> Send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness.  In the case of a billing error where the obligor alleges that the creditor's billing statement reflects goods not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction, a creditor may not construe such amount to be correctly shown unless he determines that such goods were actually delivered, mailed, or otherwise sent to the obligor and provides the obligor with a statement of such determination.

15 U.S.C. §1666(a)(B)(ii).  Not only in the Amended Complaint itself, but also in the several attached correspondence, do the Plaintiffs specifically show they were charged "for promised services and/or benefits that were never delivered or otherwise provided or refunded."  <u>See</u> Para. 5, *Amended Complaint*.  Exhibit A to the Amended Complaint states in pertinent part, "We

called VISA to get advice on how to dispute this claim and were told that we paid voluntarily so we need to show that we did not get the product we purchased". See also, Exhibit A ("In summary we were lured through DECEPTIVE BUSINESS PRACTICES to purchase a product that we didn't get.")  Indeed, it was also the position of the Massachusetts Attorney General that consumers were promised certain benefits by Netrate in exchange for membership fees but those benefits were never provided.  See Exhibit B, *Amended Complaint*.

The Defendant has contorted the decision of the U.S. District Court for the Southern District of New York in *Beaumont v. Citibank (S.D.) N.A.*, 2002 U.S. Dist. LEXIS 5276.  There, the court dismissed the claim because the plaintiff did not assert a "billing error".  *Beaumont, at \*9 and \*12*.  The plaintiff had purchased a buying club membership through which he actually purchased products and services in the Summer/Early Fall of 1999.  *Beaumont*, at \*11.  He either "did not receive the products he ordered or did not receive them in working condition".  *Id.*  After he asked the defendant bank approximately one year later to credit the amounts, presumably the defendant did so.  *Id*.  The plaintiff brought suit because the defendant was threatening "to rebill him for the disputed charges."  *Id*.  Therefore, there was no error reflected on a statement which was a necessary element of the plaintiff's claim under the TILA.  *See id, at \*12* ("Instead, the gravamen of his complaint appears to be a concern that he may, in the future, be rebilled for the PPBG purchase.")

While it is true that a "billing error under Section 1666(b)(3) does not include 'dispute[s] relating to the quality of property or services that the consumer accepts" (*id, \*10-11)*, it is also true that a billing error *does* include:

   A. The appearance on a periodic statement of a purchase, when the consumer refused to take delivery of goods because they did not comply with the contract.
   B. Delivery of property or services different from that agreed upon.

12 C.F.R. §226.13(a)(3) Supp. I subpt. B, at 664.  The Plaintiffs' situation clearly falls within "A" or "B", set forth above.  Moreover, the Section does not preclude from the meaning of "billing error" "a dispute relating to the quality of property or services" that the consumer *does not* accept. *Id*.  In the case sub judice, the Plaintiffs have adequately alleged that when they realized that what they thought they had paid for was entirely different than what was being offered to them, they immediately attempted to cancel with the merchant, thereby demonstrating either or both of 1) lack of delivery of the product or service pursuant to their agreement with Netrate; and 2) their "non-acceptance" of such services or goods.  They maintained this position even after the Defendant placed the charge back on their account and immediately notified the Defendant of their continuing position regarding the situation.

"'TILA is a remedial act intended to protect consumers, and, as such, its provisions are to be construed liberally in favor of consumers.'"  *Beaumont, at \*6-7, quoting Belmont v. Assoc's Nat. Bank (Del.), 119 F. Supp. 2d 149, 159 (E.D.N.Y. 2000)(citations omitted)*.  "[I]n order to state a claim under Section 1666, the plaintiff must allege: (1) the existence of a billing error; (2) plaintiff's timely notification of the billing error; and (3) failure of the card issuer to comply with the procedural requirements of Section 1666."  *Beaumont, at \*8.*  The Plaintiffs have met the pleading standards maintain that the Defendant violated the TILA by failing and/or refusing to comply with its obligations under 15 USC §1666(a)(B)(ii).

For its assertion that the Plaintiffs did not give adequate "reference to a billing error" in their notice to BANA, the Defendant relies on several federal district court cases from other circuits which, -like *Beamont*, simply do not support its assertion, --here, that the Plaintiffs' notification was somehow infirm.  See Reply, at pg. 10 of 16.  In *Langenfield v. Chase Bank United States, N.A., 537 F. Supp. 2d 1181, 1193 n. 15 (N.D. Okla. 2008)*, the court concluded

that the customer's complaint regarding finance charges was not a billing error because finance charges were not an extension of credit and neither was complaint centered around a computation error for purposes of (b)(5) of Section 1666. *Langenfield, at 1200-1201*. Thus, the error asserted in *Langenfield* did not fall within the definition of a billing error in Section 1666. And, contrary to what the Defendant seems to take from *Ponte v. Chase Bank USA, 2013 U.S. Dist. LEXIS 155044*, there is no requirement that an obligor use the specific term "billing error" in its notice to the creditor. Finally, in *Van Arkle v. Discover Fin. Servx. LLC, 382 B.R. 449 (N.D. Ill. 2007)*, the obligor literally did not assert a billing error, but instead was asserting a disclosure error. In the case at bar, there is no mistake that the Plaintiffs were asserting a billing error within the meaning of Section 1666.

BANA had the benefit of all the documentation the Plaintiffs provided to it, in addition to their correspondence explaining the situation. Indeed, initially, BANA issued the credit. The Amended Complaint attaches a record of all such correspondence and other documents. Clearly, such information was given in sufficient detail to support the TILA claim and notification requirements. Yet, despite the overwhelming proof of fraud, the Defendant withdrew the credit and refused to reinstate it.

Since the Plaintiffs have successfully stated a claim under Section 1666, there is no bar to their Section 1666i claim. See, e.g., *Beaumont, at \*15-16 (Acknowledging that obligor can assert a Section 1666i claim "(3) in connection with a lawsuit brought by the cardholder under Section 1640(e) for a violation of the TILA.")*

2. The Plaintiffs' TILA Claim Is Timely Brought

The Defendant maintains that the Plaintiffs' action under the TILA was brought outside the statute of limitations set forth in 15 U.S.C. §1640(e). The Plaintiffs commenced this action

with their TILA claim on October 15, 2014. The Plaintiffs first received notice of the Defendant's fraudulent conduct in rescinding its credit to the Plaintiffs' account on October 31, 2013.

"The courts have construed TILA as a remedial statute, interpreting it liberally for the consumer." King v. California, 784 F.2d 910, 915 (9th Cir. Cal. 1986). Although there is a one-year statute of limitations, the Fifth Circuit recognized, "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." King v. California, 784 F.2d 910, 915 (9th Cir. Cal. 1986). Up until October 31, 2013, the Plaintiffs were under the impression, given by the Defendant, that their issue with Netrate had been resolved. They had no reason to believe they still had a claim of any sort. It was only on that date were they informed that the $5,767 had been reposted to their account and that the Defendant refused to make them whole. Since the Plaintiffs filed suit within one year[3] of first learning of the wrong, they are within the statute.

Moreover, it is likely that statute did not accrue until after the Plaintiffs once again disputed the charge after October 31, 2013, and after the Defendant continued to maintain its refusal to act according to its obligations. There is no statute of limitations issue for the TILA claim.

---

[3] The fact that the Plaintiffs have amended their complaint, inter alia, to more specifically set forth their TILA claim, does not lend support to the Defendant's argument since the TILA claim clearly arose out of the conduct initially alleged. See Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 118 (1st Cir. Mass. 2009) ("Pursuant to Rule 15(c)(1)(B), an amended complaint relates back to a prior complaint where 'the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out--in the original pleading.'")

B. <u>The Plaintiffs' Breach of Contract Claim Is Cognizable</u>

A breach of contract claim requires "that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach". See <u>Brooks v. AIG Sunamerica Life Assur. Co.</u>, 480 F.3d 579, 586 (1st. Cir. Mass. 2007). The Amended Complaint contains several factual allegations and inferences arising therefrom.

There are several provisions in the credit card agreement ("CCA") that support the Plaintiffs' allegations in their Amended Complaint that Defendant breached its obligations.  <u>See</u> CCA and CITs[4] attached as Exhibit A.  The Amended Complaint alleges that Defendant breached its contract by "failing to remove fraudulent charges on the Plaintiffs' account and further charging interest and late fees to the Plaintiffs' account and making negative reports to credit bureau(s)." Para. 17, *Amended Complaint*.

The following portions of the contract between the Defendant and Plaintiffs are relevant to the Plaintiffs' contract claim:

- "Unauthorized Use Of Your Card" contains the directive: "Please notify us immediately of the loss, theft, or possible unauthorized use of your account".  Page 13 of 60 (Exhibit A-1);.

- Regarding "billing rights": "However, if our explanation does not satisfy you and you write to us within twenty-five (25) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill, and we must tell you the name of anyone we report you to." *Id*, Page 16 of 60, Exhibit A-1.  <u>See</u> also, *Id,* Page 30 of 60 (Exhibit A-4).  The Defendant did not abide by these terms.

---

[4] The credit card agreement ("CCA") and changes in terms ("CITs") are attached to the Defendant's motion to dismiss at Exhibit A.

- "Special Rules for Credit Card Purchases": "If you have a problem with the quality of the property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services."[5]  *Id*, Pages 17 and 30 of 60 (Exhibits A-1 and A-4)

Based upon the foregoing, the Defendant clearly had the obligation to make the Plaintiffs whole if they were victims of fraud regarding their credit account.  Moreover, it had no right to report the Plaintiffs to a credit bureau without complying with its notification obligations regarding the existence of a dispute and regarding notification to the Plaintiffs that such report was being made.

   C.  The Plaintiffs Have Sufficiently Alleged A Violation of c. 93A

"Under G. L. c. 93A, a practice is unfair if it is 'within . . . the penumbra of some common-law, statutory, or other established concept of unfairness; . . . is immoral, unethical, oppressive, or unscrupulous; [and] . . . causes substantial injury to [other businessmen].'"  Grand Pac. Fin. Corp. v. Brauer, 57 Mass. App. Ct. 407, 418-419 (2003), quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596, 321 N.E.2d 915 (1975), quoting from 29 Fed. Reg. 8325, 8355 (1964). Here, the specific conduct at issue is the Defendant Bank's removal of the chargeback of $5,423 from the Plaintiffs' credit card, despite that the Plaintiffs never received from the merchant the promised services or benefits and in view of the Defendant Bank's representation, via the initial credit card Agreement, that it would remove fraudulent charges to the Plaintiffs' card.  Moreover, the Defendant Bank then cancelled another credit card based upon the Plaintiffs' refusal to pay the disputed amount, and further reported the Plaintiffs to

---

[5] This clause contains "two limitations on this right" that are not applicable here.  *See Id.*

credit bureau(s) for their failure to pay the disputed amount. These types of action are unfair and deceptive.

Such is similar to the common law claim for breach of the implied covenant of good faith and fair dealing. "Every contract implies good faith and fair dealing between the parties to it." Clark v. State Street Trust Co., 270 Mass. 140, 153 (Mass. 1930). "The implied covenant of good faith and fair dealing provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . .'" Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-472 (Mass. 1991), quoting Drucker v. Roland Wm. Jutras Assocs., 370 Mass. 383, 385 (1976), quoting Uproar Co. v. National Broadcasting Co., 81 F.2d 373, 377 (1st Cir.), cert. denied, 298 U.S. 670 (1936). Here, the Plaintiffs entered into a Credit Agreement with the Defendant. Under such Agreement, the Defendant had an obligation to issue a credit to the Plaintiffs for fraudulent charges if timely reported. Although the Defendant recognizes its obligation to do so, it refused to issue the credit to the Plaintiffs' account by framing the situation as a consumer/merchant dispute regarding a cancellation policy. See Amended Complaint, at, e.g., Exhibit F. In fact, as it has been clear since the inception of the Plaintiffs' notification to the Defendant of the situation, the Plaintiffs only sought cancellation *after* they tried but failed to obtain the promised services or goods for which they had paid. Moreover, their right to cancel the contract had been nullified by the merchant's failure to produce access to the product in a timely fashion. As a result of the Defendant Bank's unfair refusal to abide by its agreement in good faith, the Plaintiffs were denied the benefit of their bargain. To the extent the Plaintiffs' 93A claim is supported by the Defendant's breach of the implied covenant of good faith and fair dealing, the claim must survive. See Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 476 (Mass. 1991)

(recognizing factual underpinnings of breach of implied covenant may also support claim for violation of 93A.)

Additionally, the 93A claim can be supported by conduct similar to a common law conversion which can serve as the basis of a 93A claim.  See, e.g., Wainwright Bank & Trust Co. v. Rawan, 1998 Mass. Super. LEXIS 7, *12-13 (1998) ("A claim of conversion, notwithstanding the Rawans' other factual allegations, is a sufficient basis for a Chapter 93A claim.")  The Defendant Bank essentially removed a credit from the Plaintiffs' account with no justification in law or equity to do so, resulting in a charge/debt.  Then, when the Plaintiffs again disputed the transaction, the Defendant not only did not re-issue the credit, it refused to produce any valid reason for its action.  The Defendant also proceeded to make negative credit reporting to credit bureaus, and canceled a different credit card account held by Mr. Calvanese.  Regarding the cancelation of this other credit card, although the CCA indeed states that the Defendant can cancel the account "at any time" or "for any reason", certainly it cannot do so in order to force the Plaintiffs to surrender their valid claim or otherwise punish them.  To do so transgressed c. 93A and other relevant law.

The Defendant Bank further exposed itself to liability under the statute by failing to make a reasonable offer of settlement in view of the clear violation of the Consumer Protection Statute.  See Mass. Gen. L. c. 93A, §9.

The Plaintiffs' claim is not precluded on the basis of any purported insufficiency of the demand letter made pursuant to Mass. Gen. L. c. 93A ("93A Letter").  Indeed, the Defendant was provided reasonable notice of the Plaintiffs' claim, as required by Mass. Gen. L. c. 93A, §9. The 93A letter describes in detail the conduct of which the Plaintiffs complains and seeks restoration and damages, including of the $5,767.

For the foregoing reasons, the Plaintiffs' claim should survive this motion.

### D.  The Plaintiffs Have Sufficiently Stated A Claim For Fraud

Mass. R. Civ. P. 9 requires that, regarding the pleading of a fraud claim, "the circumstances constituting fraud [omitted] shall be stated with particularity." Mass. R. Civ. P. 9.  The elements of fraud are "the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage." Kilroy v. Barron, 326 Mass. 464, 465 (Mass. 1950).  Here, the Plaintiffs' allegations meet the requirements of setting forth the elements with appropriate specificity.  Paragraph 8 sets forth the first of the fraudulent statements as occurring on July 29, 2013 via written correspondence in which the Defendant represented that the situation was resolved and the Plaintiffs' account was credited; but if the merchant produced evidence that the transaction was valid, the Defendant would produce such documents to the Plaintiffs and allow them to respond.  Paragraph 9 alleges the Defendant made a similar representation by phone on July 29, 2013, and added that the merchant had only 45 days to dispute the resolution.  The Defendant intended for the Plaintiffs to rely on those statements.  Paragraph 10 alleges that the Plaintiffs reasonably relied on the Defendant's representations to consider the matter resolved, or if later re-opened, that they would have the chance to address any argument asserted by the merchant within 45 days.  After 90 days had passed, the Defendant notified the Plaintiffs it was replacing the debit to their charge account. Para. 13, *Amended Complaint*. As a result of the Plaintiffs' reasonable reliance on the misrepresentations, the Plaintiffs lost the ability to pursue Netrate directly.  See Para. 10, *Amended Complaint*.  Thus, the elements of fraud are clearly and precisely stated.

<u>Sanctions</u>

The Defendant's litigation conduct is abusive and warrants sanctions. After the Plaintiffs brought suit in the state district court in Springfield based upon this approximately $5,400 charge, the Defendant promptly removed the case to this Court. Then, after losing its first motion to dismiss before this Court, and the case was transferred back to the state court, it again removed the case to this Court. Once more, the Defendant has submitted a motion to dismiss in which it asserts similar arguments as those advanced in its initial motion which were not successful in preventing the Plaintiffs' TILA and other claims. It is evident that the Defendant, a national credit company, intends to force the Plaintiffs, who are individual consumers, to pay substantial litigation costs in order to pursue their valid claims. Such conduct is clearly designed to deter consumers from pursuing their rights and should be subject to penalty.

<u>Conclusion</u>

WHEREFORE, the Plaintiffs hereby oppose the Defendant's motion and request this Court to deny same. In the event the Court is to allow the motion, the Plaintiffs respectfully request the opportunity to amend their Complaint prior to a final ruling.

**THE PLAINTIFFS REQUEST A HEARING ON THE MOTION TO DISMISS.**

        THE PLAINTIFFS
        DEBRA A. CALVANESE and ALPHONSE
        F. CALVANESE

BY:   /s/ Thomas A. Kenefick, III_____
        THOMAS A. KENEFICK, III, ESQ.
        BBO #267620
        73 Chestnut Street
        Springfield, MA  01103
        (413) 734-7000 – telephone
        (413) 731-1302 – facsimile
        takenefick@takenefick.com

Date: September 14, 2015

Certificate of Service

  I, Thomas A. Kenefick, III, do hereby certify that the foregoing was served on the Defendant via the Electronic Filing System on September 14, 2015.

              /s/ Thomas A. Kenefick, III_____
              THOMAS A. KENEFICK, III